No. 19,880.

JUSTUS B. LINDERHOLM, *Appellant,* v. THE KANSAS CONFERENCE OF THE SWEDISH EVANGELICAL LUTHERAN AUGUSTANA SYNOD OF NORTH AMERICA, *Appellee.*

### SYLLABUS BY THE COURT.

CHURCH MEMBER—*Excommunication—Appeal to Church Conference—Decision of Conference Final—Not Entitled to New Trial.* The plaintiff was excommunicated by the church council of Bethany Lutheran church at Lindsborg, an unincorporated religious society of which he was a member. The by-laws of the church provided for an appeal to the conference, a voluntary association of Lutheran churches. The by-laws also contained the following provision: "The decision of the conference in the matter shall in all events be final." The plaintiff appealed to the conference, which ratified the action of the council.

The plaintiff filed a motion for a new trial. The conference decided that the document could lead to no further consideration of the cause. The plaintiff sued the conference for damages for not hearing the motion for a new trial. A demurrer was sustained to his evidence. *Held,* the demurrer was properly sustained, because the plaintiff failed to show any church rule, custom or usage requiring the conference to consider a motion for a new trial; the conference was not bound by the common-law rules of civil procedure, and the by-law quoted forbids further action by the conference after it has decided an appeal.

Appeal from McPherson district court; FRANK F. PRIGG, judge. Opinion filed February 12, 1916. Affirmed.

*John F. Hanson,* of Lindsborg, for the appellant.

*G. F. Grattan,* and *John M. Grattan,* both of McPherson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for the refusal of a church conference to hear a motion for a new trial. A demurrer was sustained to the plaintiff's evidence and he appeals.

Linderholm was a member of the congregation of Bethany Lutheran church, an unincorporated religious society at Lindsborg. The by-laws of the church contained the following provisions:

"Should the warning be without any effect as to the one called, the church council shall suspend or excommunicate according to the word of God. The person excommunicated loses then all his rights to any part in the congregation's real or personal property. . . . If the member is not satisfied with the church council's decision concerning himself, he may appeal to the conference on the condition that he, within a week, gives notice to the church council after he has received notice of the decision, and states his reason and grounds for his appeal. The decision of the conference in the matter shall in all events be final."

Charges were preferred against Linderholm and he was excommunicated. He appealed to the conference, a voluntary association of Lutheran churches. The conference sustained the action of the church, as appears by the following transcript of its proceedings:

"Conference Minutes 1904. Mr. J. B. Linderholm had appealed to the Conference from the decision of the church council of Bethany congregation at Lindsborg.

"The Conference elected a committee to take this appeal into consideration and to go through the documents and as a result thereof to lay resolutions before the Conference. As members of this committee were elected Rev. S. E. Glad, and C. A. Henry and Mr. Gust Burk.

"At the sixth session this committee rendered the following report:

"The committee, elected to consider the appeal sent to the Conference by J. B. Linderholm, reports as follows:

"(a) It appears that said Linderholm has on account of unkind judgments and threats been refused admittance to the Lord's supper, and that after continued obstinacy and unbecoming conduct during divine service has been excommunicated by the church council;

"(b) That although Linderholm has in writing bound himself to desist from strife he nevertheless has continued as before in publications, in word and action;

"(c) That in his appeal he admits his irresponsibility for 'coarseness and peculiarities' with which he has confronted those who time and again have attempted to bring about a reconciliation with him.

"(d) The committee moves, that the action of the church council be ratified.                                     THE COMMITTEE.

"The report was accepted by the Conference."

The plaintiff, through his attorney, John F. Hanson, filed a motion for a new trial, which the conference disposed of in the following manner:

"Decided that whereas, the conference already decided this matter or case these writings can not be given or lead to any further consideration on the part of the conference."

This action of the conference is the foundation of the plaintiff's claim for damages, the specific allegation of the petition being, "that plaintiff by the refusal of said conference to sit and hear said motion for new trial as aforesaid has been damaged in the sum of $5000."

The record of the proceedings in the district court contains no statement by the court respecting the defect or defects in the plaintiff's proof, and failure to establish any material allegation of the petition is fatal to recovery. Conceding, but not deciding, that damages might have been awarded for a departure from orderly church procedure, there is no proof that the conference was guilty of such conduct.

There was evidence that the Lindsborg church sprung from the Swedish Lutheran church in Sweden, that "there is a tendency to follow that and get precedents from that when it can reasonably be adopted," but that trial procedure depends in this country on custom and usage, and it is customary to

proceed in some reasonable way. What the usages and customs of the Lutheran church in this country or in any other country may formerly have been, or may now be, respecting new trials by conferences after decisions of appeals from church councils, was not shown.

The plaintiff offered in evidence a provision of the church law of Sweden which states that "in other matters of practice the cause shall proceed on appeal the same as in the secular courts." The offer was rejected, but the evidence will be treated as if it had been admitted. The secular courts referred to are the courts of Sweden. There was no proof or offer of proof that new trials are a part of the procedure in those courts, and it is impossible to declare or to infer that the provision offered in evidence related in any way to the subject of new trial. Beyond this, the testimony went no further than that there is a "tendency" to follow Swedish precedents. How far this tendency prevails and how far it has been superseded by modern American customs does not appear, and so far as the proof discloses, a new trial after a conference decision on appeal may be quite contrary to such customs.

The attorney for the plaintiff, testifying not as an expert in church law and custom but simply as "a lawyer," expressed the opinion that a new trial, under the circumstances of this case, would be a reasonable procedure in this country in the Lutheran church where no specific procedure is provided. This testimony failed to touch the subject of the existence or nonexistence of a church law, church usage or church custom requiring a Lutheran conference to consider a motion for a new trial after determining an appeal to it from the action of a church council in excommunicating a member of a congregation.

There was just one piece of evidence introduced by the plaintiff which bore directly on the subject under consideration, and that was the decision of the conference itself, the highest church tribunal to which the plaintiff could appeal, that the motion for a new trial could not lead to any further consideration of the cause. In written briefs by the plaintiff himself and by his attorney, both of which descend to scurrility, this decision is characterized as arbitrary, inexcusable, despotic, and revolutionary. There is not a particle of evidence relating

to the attitude of the conference or of its members toward the motion for a new trial other than the written decision itself. That is a document which this court can interpret, and on its face it discloses nothing but an opinion that a motion for a new trial did not lie after the conference had decided the appeal. There is not the slightest hint in the evidence that this was not the conscientious opinion of a church tribunal having knowledge of its duties and its powers under church law and precedent, and having final authority in the matter. There is abundant authority that this decision conclusively binds the civil courts, but leaving the decision out of consideration, there is no evidence offered or introduced from which a civil court or jury could say that a motion for a new trial was a recognized or proper remedy available to the plaintiff after the conference had decided the appeal.

It is said that in the absence of rules adopted by a religious association governing the procedure of its tribunals in cases of excommunication, the rules of the common law prevail. It seems that the practice of granting new trials had not been settled in England so that we can now know definitely what it was in the fourth year of James the First, when the common law of England was imported into this country. (14 Encyc. Pl. & Pr. 717.) Whatever the practice, it related to jury trials and obtained in courts of general jurisdiction only. It was not permissible, as it is not now permissible, in tribunals possessing special or limited authority. Beyond this, however, the broad, general doctrine apparently approved by a few courts, that common-law civil procedure invades church procedure in such a way as to control the action of church tribunals in matters not governed by specific church rules duly adopted, has no lodgement in this state. In so far as a church society has not prescribed rules of procedure for its tribunals, those tribunals may adopt their own procedure, and they are not obliged to guide themselves in the disposition of causes by Blackstone and Chitty and Stephens. Church tribunals possess the same authority in this respect that state tribunals possess, subject to the limitation that they can not violate positive law, or act in bad faith, or act so unconscionably or oppressively as to indicate bad faith. Persons becoming members of unincorporated religious societies do so subject to these conditions.

It so happens that the Lindsborg church has an adopted rule governing the subject under discussion, whatever the general laws or customs of Lutheran church government may be. It provides for an appeal from the church council to the conference, and then specially provides that the decision of the conference shall in all events be final. The case ends absolutely, so far as the person on trial is concerned, when the conference renders its decision. There are no further proceedings of any kind in the same or in any other tribunal. Litigiousness is not indulged in the tribunals of this church to the extent that it may be indulged in the civil courts.

There are other reasons why the plaintiff's case utterly failed, but they need not be enumerated. The foundation of the supposed cause of action, the right to a new trial by the conference, did not exist.

The plaintiff in his brief *pro se* undertakes to give the court the real inside facts about his troubles at Lindsborg, and so gives his version of the whole story, beginning about the year 1901. What he regards as the true motive for the insanity proceedings against him is revealed. The scene in which the plaintiff retired from the conference (he probably means council) is of tense dramatic interest:

"My patience was at an end. I sprang up, and with an expression sometimes used by Luther when extremely vexed I left the room."

The briefs contain much other matter quite as remote from the single subject presented by this appeal. It is to be hoped that upon reflection the plaintiff and his attorney will perceive that this court is bound by the record made in the district court.

Complaint is made that the district court did not require the answer to be made more definite and certain. Since the court did not reach them, it makes no difference what affirmative defenses the answer contained.

The judgment of the district court is affirmed.